# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**March 31, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

ELLEN BASILY,  )
    )
    Plaintiff/Appellant,  )  Davidson Circuit
    )  No. 95C-3678
VS.  )
    )  Appeal No.
RAIN, INC., and ERI-AW, INC.,  )  M1998-00917-COA-R3-CV
    )
    Defendants/Appellees.  )

## APPEAL FROM THE DAVIDSON COUNTY CIRCUIT COURT
### AT NASHVILLE, TENNESSEE

### THE HONORABLE THOMAS W. BROTHERS, JUDGE

For Plaintiff/Appellant:

Joseph L. Lackey, Jr.
Lackey, Rodgers, Price & Snedeker
Nashville, Tennessee

For Rain, Inc.:

Leonard F. Pogue, III
Lisa Ramsay Cole
Lewis, King, Krieg, Waldrop & Catron
Nashville, Tennessee

For ERI-AW, Inc.:

Thomas C. Corts
Ortale, Kelley, Herbert & Crawford
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a tenant who was injured when she tripped over a raised sprinkler that was part of the automatic irrigation system of the apartment complex where she lived. The tenant filed suit in the Circuit Court for Davidson County against the owners of the apartments and the company that maintained the irrigation system, alleging that they left the sprinkler head in its raised position after performing routine maintenance. The trial court granted both defendants' motions for summary judgment, and the tenant has appealed. We have determined that the apartment owners and the irrigation company are entitled to judgment as a matter of law and, accordingly, affirm the summary judgments.

## **I.**

In late 1994, Ellen Basily lived in Nashville at the Autumn Wood Apartments, a large apartment complex located on Hickory Highlands Drive. Ms. Basily, a cosmetologist by training, was employed by a cosmetics company and was working in various Dillard's stores in the Nashville area. She left Nashville in March 1995 and is currently a self-employed singer residing in Boca Raton, Florida.

The apartment building at Autumn Wood where Ms. Basily lived is separated from the parking lot by landscaping and a strip of grass. The building is connected to the parking lot by a concrete sidewalk. This sidewalk is connected with another sidewalk that runs along the edge of the parking lot, forming a "T" at the intersection. As part of its automatic irrigation system, Autumn Wood had installed a sprinkler head at the intersection of the two sidewalks to the right of the sidewalk leading from the apartment building. When the sprinkler is operating, it protrudes approximately three to four inches out of the ground; when it is not operating, it was designed to return to ground level.

Autumn Wood customarily retained Rain, Inc. to maintain its irrigation system. On November 1, 1994, four Rain, Inc. employees were preparing the system for winter by removing excess water from the lines to prevent the water from freezing and cracking the lines during the winter months. They removed the water by injecting

compressed air into the system which caused any remaining water to be ejected through the sprinkler heads. In addition to pushing the water out of the system, the force of the air caused each sprinkler to rise out of the ground – just as if they were operating normally. The sprinklers were designed to return to their normal ground-level position when the air was turned off.

When the irrigation system was first installed, it was divided into four independent zones because of the size of the apartment complex. Each of these zones operates on its own controller. On November 1, 1994, Rain, Inc.'s employees, were working in two-person teams. One employee was stationed at the controller while the other employee walked around the zone to observe the sprinklers as they were being blown out. They eventually completed winterizing all zones at the complex by approximately 11:30 a.m. on November 1, 1994.

Ms. Basily left her apartment at approximately 11:00 a.m. to go to work at the Dillard's in Hickory Hollow Mall. She was carrying a brief case and a shoulder bag. As she reached the intersection of the two sidewalks, she turned to her right and then felt herself losing her balance because "something had grabbed the top of my [right] shoe, or an object had actually made contact with the top of my shoe." Ms. Basily fell on her right side, hip first, in the middle of the sidewalk running along the parking lot. When she looked back, she "saw a black object projecting up out of the ground." This black object was the sprinkler that was still protruding from the sprinkler head following the winterizing of the system. Ms. Basily did not know what the black object was at the time and was unaware that Autumn Wood had an irrigation system even though she had lived there for more than one year.

Several other tenants assisted Ms. Basily to the manager's office after she fell. From there she took a taxi to the emergency room at Southern Hills were X-rays revealed no fractures. Because she was experiencing extreme pain and nausea, she asked her lawyer to recommend a physician. The physician likewise found no fractures but treated "[t]he whole area of my body" for muscle spasms and "excruciating pain" using a combination of therapy and medications. Ms. Basily last sought medical assistance in July 1995.

In October 1995, Ms. Basily filed a $300,000 negligence action in the Circuit Court for Davidson County against the owners of Autumn Wood, the corporation managing the apartments, and Rain, Inc. She alleged that Rain, Inc.'s employees negligently left the sprinkler in its raised position after they had completed winterizing the irrigation system and that Autumn Wood had negligently failed to discover that the sprinkler heads had not returned to ground level following the maintenance by Rain, Inc. Following discovery, Autumn Wood and Rain, Inc. moved for summary judgment relying upon affidavits of their employees and Ms. Basily's deposition. Ms. Basily opposed the motions with her own affidavit. The trial court granted both motions for summary judgment, concluding that the raised sprinkler head did not create a dangerous condition. Ms. Basily has appealed from this decision.

## II.
### THE STANDARD OF REVIEW

We begin with the well-settled standards governing appellate review of summary judgments. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *See Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Tomlinson v. Kelley*, 969 S.W.2d 402, 405 (Tenn. Ct. App. 1997). They are not, however, appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *See Eyring v. Fort Sanders Parkwest Med. Ctr.*, 991 S.W.2d 230, 236 (Tenn. 1999); *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998); *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998).

Unlike other dispositions by a trial court without a jury, summary judgments do not enjoy a presumption of correctness on appeal. *See Nelson v. Martin*, 958 S.W.2d 643, 646 (Tenn. 1997); *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). Accordingly, reviewing courts must decide anew whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the nonmoving party,

and we must resolve all inferences in the nonmoving party's favor. *See Terry v. Niblack*, 979 S.W.2d 583, 585 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997).

When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *See Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). A summary judgment should not be granted if any reasonable doubt exists with regard to the conclusions to be drawn from the evidence. *See Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538 (Tenn. 1998).

### III.
#### LIABILITY FOR THE RAISED SPRINKLER

Ms. Basily takes issue with the summary judgment on two grounds. First, she asserts that the trial court erred by concluding that the raised sprinkler over which she tripped was not a dangerous condition. Second, she argues that the trial court erred by concluding that Rain, Inc. and Autumn Wood did not have a legal duty to protect her from the raised sprinkler. While we have concluded that the trial court erred by concluding that the raised sprinkler was not a dangerous condition, we have concluded that the trial court correctly held that Ms. Basily had not established that either Rain, Inc. or Autumn Wood were obligated either to remove or to warn her of the sprinkler's condition.

### A.

Owners or occupiers of business premises are not insurers of their customers' safety. *See McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 902 (Tenn. 1996); *Shofner v. Red Food Stores (Tenn.), Inc.*, 970 S.W.2d 468, 470 (Tenn. Ct. App. 1997). They do, however, have a duty to use reasonable care to protect their

customers from unreasonable risks of harm. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998); *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984); *Jackson v. Bradley*, 987 S.W.2d 852, 854 (Tenn. Ct. App. 1998). This duty includes maintaining the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McClain*, 891 S.W.2d 587, 593-94 (Tenn. 1994).

The courts, exercising their responsibility for determining whether a legal duty exists,[1] have declined to impose a legal duty on owners and occupiers of business premises in two circumstances. First, they have declined to impose a duty to protect against conditions from which no unreasonable risk of harm can be anticipated. *See Rice v. Sabir*, 979 S.W.2d at 309. A risk of harm is unreasonable if the foreseeable probability and gravity of the harm outweigh the burden imposed on the defendant to engage in alternative conduct that would have prevented the harm. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Jackson v. Bradley*, 987 S.W.2d at 854. Second, they have declined to impose a duty when the occupier neither knew about nor could have discovered the condition in the exercise of reasonable care. *See Rice v. Sabir*, 979 S.W.2d at 309. The existence of a dangerous condition alone will not give rise to a duty "unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Rice v. Sabir*, 979 S.W.2d at 309. Thus, plaintiffs in premises liability cases must generally prove that the condition existed for such a length of time that the owner or occupier knew or, in the exercise of ordinary care should have known, of its existence. *See Hardesty v. Service Merchandise Co.*, 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997).

## B.
### THE EXISTENCE OF A DANGEROUS CONDITION

The sprinkler head itself is not dangerous. When the sprinkler is not operating, the head and sprinkler are flush with the ground and do not present an obstacle that

---

[1]*See Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998); *Blair v. Campbell*, 924 S.W.2d at 78; *Jackson v. Bradley*, 987 S.W.2d at 853.

persons walking on the adjacent sidewalks could trip on. Thus, it is not reasonably foreseeable, based on the evidence in this record, that persons walking along the sidewalks near Ms. Basily's apartment building might trip over the sprinkler or sprinkler head when the sprinkler was fully retracted.

The same cannot be said for the sprinkler in its operating position. When fully extended as designed, the sprinkler protrudes three to four inches above ground level. In light of its narrow cylindrical shape, its dark color, and its proximity to the intersection of the two sidewalks, it is certainly foreseeable that it would go unnoticed by a passersby, especially when the irrigation system was not actually operating. Accordingly, it is foreseeable that a passerby might trip over the raised sprinkler while turning the corner from one sidewalk to another. It is also foreseeable that persons who trip over the raised sprinkler could be seriously injured.

Correcting a sprinkler that has not retracted is a relatively simple matter. The owner of Rain, Inc. testified in his deposition that pop-up sprinklers like the ones installed at Autumn Wood rarely fail to retract and that when one sticks, it will retract when someone pushes down on it with a hand or taps on it lightly with a foot. Based on this testimony, we conclude that, as a general matter, the foreseeability and gravity of the harm that could result from someone tripping over a sprinkler that has not retracted outweighs the burden placed on the Autumn Wood and Rain, Inc. to assure that all the sprinkler heads are retracted after winterizing the irrigation system.[2] Accordingly, we find that the raised sprinkler immediately adjacent to the sidewalks near Ms. Basily's apartment building presented an unreasonable risk of harm. Therefore, the trial court erred by concluding that this particular sprinkler was not a dangerous condition.

## C.
### NOTICE OF THE DANGEROUS CONDITION

Concluding that the trial court erred by finding that the raised sprinkler was not a dangerous condition does not end our inquiry. When liability in cases of this sort

---

[2]The president of Rain, Inc. testified that his employees did not customarily inspect each sprinkler head after winterizing an irrigation system and that inspecting each sprinkler head would have increased the cost of the work by fifteen percent.

is premised on constructive notice, the plaintiff must prove that the dangerous condition existed long enough that the defendants would have discovered and corrected it had they used due care. There can be no liability in negligence without this proof. Ms. Basily has not demonstrated that the sprinkler had been stuck in its operating position long enough to have been discovered either by Rain, Inc. or Autumn Wood. Thus, the summary judgments were appropriate because Ms. Basily has not demonstrated that she will be able to establish an essential element of her case.[3]

Rain, Inc.'s employees were still winterizing the irrigation system when Ms. Basily left her apartment on the morning she fell. According to the uncontradicted evidence, they did not complete their work until 11:30 a.m., approximately thirty minutes after Ms. Basily fell. Without evidence regarding the sequence in which the work was performed, there is no reliable way to determine when or if the work on the zone that included the sprinklers near Ms. Basily's apartment had been completed when Ms. Basily fell. The record also contains no evidence from which a trier of fact could decide how long the sprinkler had been stuck in its operating position. A jury can only speculate whether it had been stuck for one minute or for one hour.

Ms. Basily had the burden of proving that the sprinkler had been stuck long enough to have been discovered and corrected by either Rain, Inc. or Autumn Wood had they been exercising due care. *See Hardesty v. Service Merchandise Co.*, 953 S.W.2d at 682; *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 46 (Tenn. Ct. App. 1995); *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271, 273 (Tenn. Ct. App. 1987). She cannot get to the jury without this evidence. Accordingly, we hold that both Rain, Inc. and Autumn Wood are entitled to a summary judgment because the record contains no evidence regarding the length of time the sprinkler was stuck before Ms. Basily tripped over it.

---

[3]We may affirm a judgment upon different grounds than those relied on by the trial court when the trial court has reached the correct result. *See Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Kaylor v. Bradley*, 912 S.W.2d 728, 735 n.6 (Tenn. Ct. App. 1995); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

## D.

### THE DUTY TO WARN

As a final matter, Ms. Basily argues that Rain, Inc. and Autumn Wood were negligent because they did not warn the residents that maintenance would be performed on the irrigation system on November 1, 1994. She asserts that they should have distributed fliers to the residents or that they should have placed orange warning cones on the sidewalks where the system was being winterized. We have determined that these warnings were not required because neither Rain, Inc. nor Autumn Wood should have been expected to anticipate that winterizing the irrigation system would create an unreasonable risk of harm.

The president of Rain, Inc. testified without contradiction that sprinklers like the ones at Autumn Wood rarely fail to retract and that he was unaware of anyone ever tripping over a sprinkler head. He also stated that there was no standard in the industry requiring the inspection of each sprinkler head after the winterization process to make sure that the sprinkler was returned to its normal position. Likewise, two employees of Autumn Wood testified that they were unaware of any reports that someone had tripped on a sprinkler head or sprinkler at the apartment complex. We decline to find as a matter of law that either Rain, Inc. or Autumn Wood had a duty to warn residents that they were winterizing the irrigation system in the absence of any proof that either party should reasonably have anticipated that winterizing the irrigation system could create an unreasonable risk of harm to persons living in the apartment complex.

## IV.

We affirm the summary judgments granted to Rain, Inc and Autumn Wood and remand the case to the trial court for any further necessary proceedings. We tax the costs of this appeal to Ellen Basily and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
WILLIAM B. CAIN, JUDGE


_____
PATRICIA J. COTTRELL, JUDGE