# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 22, 2002 Session

## LASSIE FRAZIER, ET AL. v. BROCK'S OPEN AIR MARKET

### Appeal from the Circuit Court for Cocke County
### Nos. 26,443-II & 26,547-II    Richard R. Vance, Judge

### FILED SEPTEMBER 17, 2002

### No. E2002-00203-COA-R3-CV

Clifford Frazier and Azeline Kittrell were sitting on a bench located in front of Brock's Open Air Market. Catherine Ottinger ("Ottinger"), who already had consumed six beers, was at the store to purchase a salad and more beer. As Ottinger was leaving, her car, for whatever reason, accelerated rapidly while in reverse and made a U-turn at a high rate of speed. While in reverse, Ottinger drove onto a public road and then came back onto the store's premises, jumped a concrete curb and hit Clifford Frazier and Azeline Kittrell, who later died from their injuries. Plaintiffs sued Brock's Open Air Market asserting, as relevant to this appeal, premises liability. The Trial Court granted summary judgment to Brock's Open Air Market on the basis that the accident in question was not reasonably foreseeable. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
### Circuit Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

P. Richard Talley and Steven Douglas Drinnon, Dandridge, Tennessee, for the Appellants Lassie Frazier, surviving spouse of Clifford Frazier, deceased, for her benefit and the benefit of sons Arthur Frazier, Elmer Frazier, David Frazier, daughters Edna Valentine, Faye Crum, Ada Woody, Gladys Boles and Diana Miller, and Basil Stanton Kittrell, individually and as personal representative of the estate of Azeline Kittrell.

Jeffrey M. Ward, Greeneville, Tennessee, for the Appellee Brock's Open Air Market.

# OPINION

## Background

These consolidated appeals arise from the tragic and somewhat bizarre deaths of Clifford Frazier and Azeline Kittrell on July 15, 1999. At approximately 10:00 a.m., Catherine Ottinger bought six beers at Brock's Open Air Market ("Defendant" or "Market"). After consuming these six beers, Ottinger returned to the Market around 3:00 p.m. and bought a salad and six more beers. Ottinger parked in front of the Market where there were several parking spaces. In front of each parking space was a concrete curb to prevent cars from pulling too close to the Market. A sidewalk was between the Market and the concrete curbs. When Ottinger was in the driver's seat of her car, she was facing the Market. Looking at the Market from her car, the doors in and out of the Market were to her left. To her right and on the sidewalk was an ice machine with a guardrail in front of it. To the right of the ice machine and guardrail was a bench. There was no guardrail in front of the bench.

After purchasing the salad and six pack of beer during her second trip to the Market, Ottinger got into her car and placed it in reverse. According to eyewitnesses, Ottinger backed out at a high rate of speed and proceeded to make a U-turn while in reverse. Ottinger's vehicle proceeded out onto the road, jumped over one of the concrete curbs, and then went up on the sidewalk of the Market. Ottinger's vehicle went onto the sidewalk from the side. Ottinger struck the bench where Clifford Frazier and Azeline Kittrell were sitting and pinned them against the ice machine. Clifford Frazier and Azeline Kittrell were taken to the hospital, but both died from their injuries. Ottinger, who was 82 years old at the time of the accident, was taken to the hospital and later released. While at the hospital, a blood test was administered to Ottinger and her blood alcohol level was .128.

Separate lawsuits were filed by Lassie Frazier ("Frazier") and Basil Stanton Kittrell ("Kittrell") (collectively referred to as "Plaintiffs"), the personal representatives of Clifford Frazier and Azeline Kittrell. Although several causes of action were asserted by Plaintiffs, as pertinent to this appeal, Plaintiffs claim a defective, unsafe, and dangerous condition existed on Defendant's premises which proximately caused the deaths of Clifford Frazier and Azeline Kittrell. Plaintiffs also claim Defendants knew or should have known of the defective, unsafe, and dangerous condition.

Frazier filed suit on May 15, 2000, and Kittrell filed suit on July 11, 2000. Along with the complaints, Frazier and Kittrell served interrogatories, requests for production of documents, and requests for admissions. Defendant timely filed answers to both complaints, denying the pertinent allegations contained therein. Defendant also timely filed responses to the requests for admissions, but apparently never responded to the interrogatories or requests for production of documents filed by either Plaintiff. The Frazier lawsuit was set for trial on February 1, 2001, but was continued on January 24, 2001, upon agreement of the parties after Frazier filed a motion indicating discovery had not been completed. In February 2001, Plaintiffs were served with interrogatories and requests for production of documents filed by Defendant.

On April 5, 2001, Defendant filed three affidavits in the Frazier lawsuit, including the affidavit of Ms. Moore ("Moore"), Defendant's owner and manager. Moore stated the bench in front of the Market had been there the entire time she owner the Market. Moore denied selling any beer to Ottinger on her first visit to the Market that fateful day and denied Ottinger was visibly intoxicated. Moore went on to state she heard screeching of tires and a loud impact and went outside to see what had happened. According to Moore:

> When I arrived outside, I saw a vehicle driven by Catherine Ottinger located at the left front corner of the store. The vehicle had somehow been backed into the left side of the store into the area where the bench was located and the rear of the vehicle was wedged in between the guardrail and the wall of the store.… [T]he back wheels of the vehicle were still spinning. Mr. Frazier and Ms. Kittrell were pinned against the ice machine.… Prior to the time of this accident, and during all of the time that I have been involved with the market, there has never been an accident of this nature. Additionally, to the best of my knowledge, there has never been an accident causing injury to any person sitting on the bench in front of the market prior to this accident.

Defendant also filed the affidavit of Michael Messer ("Messer"), who was an eyewitness to the accident. In his affidavit, Messer stated Ottinger backed out of the parking place at "full throttle," made a U-turn up the left side of the Market and went over the curb. According to Messer, Ottinger's vehicle was wedged between the Market and the guardrail, destroying the guardrail and an awning in front of the Market. The vehicle continued to run at full throttle until someone opened the driver's door and turned the vehicle off.

Patricia Holt was parked next to Ottinger's vehicle. Holt claims in her affidavit that Ottinger "revved" her car engine and was running at "full throttle" when she backed out of the parking space, striking Holt's vehicle as she did so. Holt stated Ottinger "continued to back out onto East Broadway Street and then onto Lincoln Avenue, which is the road located on the left side of Brock's.… Ms. Ottinger continued to back in a circle when her vehicle ran into the left front of the store where Mr. Frazier was sitting on the bench."

On May 14, 2001, Defendant filed motions for summary judgment in both lawsuits, relying on the three affidavits filed the previous month. In the motions, Defendant claimed, among other things, that it did not have notice of the alleged dangerous or defective condition and the injuries suffered by Plaintiffs were not foreseeable, and, therefore, Defendant owed no duty to Plaintiffs. The two lawsuits then were consolidated.

On June 1, 2001, Plaintiffs filed a notice of deposition for the deposition of Ottinger to be taken on June 21, 2001. Ottinger was deposed on that date. In her deposition, Ottinger stated she did buy a six pack of beer from Defendant on the morning of July 15, 1999. She drank all six

beers and then returned to the Market about 3:00 p.m, at which time she purchased a salad and six more beers. Ottinger recalls getting into her vehicle with the salad and beer and "[t]he car jumped. When I started it, it jumped and that's all I remember."

On July 10, 2001, Defendant filed a motion to compel discovery because Plaintiff had not responded to the interrogatories and requests for production of documents filed in February. Frazier responded to this discovery on July 23, 2001. Defendant then withdrew the motion to compel.

In response to Defendant's motion for summary judgment, Plaintiffs filed the affidavit of J. Harold Deatherage ("Deatherage"), a civil engineer. According to Deatherage:

> I have seen the premises known as Brock's Open Air Market. On July 15, 1999, the bench which Brock's provided for customers at the front of the store constituted a dangerous condition. A bench located immediately adjacent to parking for customers poses an extreme hazard for persons sitting on the bench with vehicles going and coming. Furthermore, Brock's provided insufficient barricades to protect customers sitting on the bench from vehicles.

In opposing the motion for summary judgment, Plaintiffs relied on the affidavit of Deatherage, the deposition of Ottinger, as well as the affidavits filed by Defendant.

The motion for summary judgment was heard on August 24, 2001. At the hearing, Defendant's counsel conceded Deatherage's affidavit created a genuine issue of material fact as to whether or not the bench was a potentially dangerous condition. Nevertheless, Defendant claimed summary judgment still was appropriate because Defendant had no notice of the defective condition and because the accident in question was not foreseeable. At the hearing, Plaintiffs' counsel orally informed the Trial Court that Plaintiffs needed additional discovery. This was the first time Plaintiffs' need for additional discovery was brought to the attention of the Trial Court. Specifically, Plaintiffs' counsel stated:

> A couple of preliminary matters – I have not completed discovery in this case. I have not deposed . . . Moore. Those affidavits were filed back when the motion came down. I'm not sure when they were filed, sometime earlier this year. And I have not deposed the two witnesses who have signed those affidavits. In addition to that, I had served some Requests to Admit and some Interrogatories on the defendant. And as I read my file, you all responded to the Request to Admit, but did not answer the Interrogatories, I don't think. So, there is some discovery, frankly, I need to complete, I feel like, to make this a complete record. But I'm prepared to respond to their motion, piece by piece.

After hearing arguments from counsel, the Trial Court granted Defendant's summary judgment motion. In doing so, the Trial Court stated, in relevant part, as follows:

> One thing that is important to note is that a part of [the] duty [of] a premises owner is not [as] a guarantor of the safety of the persons who come on the property. They must use reasonable care to protect someone on the property from dangers, defective conditions about which they know or reasonably should know and that they use reasonable care in the maintenance of their premises…. The issue is the extent to which the premises owner has a duty to protect someone sitting on that bench from an automobile or motor vehicle using the parking lot…. There is no proof before the Court that before the date of this accident that any other accident had occurred involving this park bench. Absence of an accident doesn't prove that the premises owner should not have foreseen or maybe not been aware of a potential hazard.

> \* \* \* \*

> The critical issue is the foreseeability of this type of … specific accident occurring. The facts are undisputed that Ms. Ottinger, for whatever reason, lost control of her vehicle, [and] went in reverse from the parking space…. [Her car] even backed out on the public street, circled around, still in reverse, came in behind the guard rail in question. Whether the guard rail was directly in front of the bench or not directly in front of the bench, that didn't matter, because her vehicle came in behind it from the side and struck these two people, resulting in their terrible death…. If this was a common occurrence, that people's accelerators jammed to the floor and they swung their car around, you would almost have to put up steel and concrete barriers to protect everybody who was standing at any point on the premises…. Under the facts of this case, even had there been an impenetrable concrete steel barrier in front of the bench, this vehicle from the direction it came, it wouldn't … have changed anything.

> \* \* \* \*

> In this particular case it's shown that Brock's did place barriers …. It's undisputed that there were the typical parking concrete curb, intended to stop vehicles from coming directly forward, to either protect people that might be standing there or the building itself. They are common. They're used everywhere and they

were placed in this location.…   This Court must find that the
defendant is entitled to a Motion for Summary Judgment in that …
this accident could not possibly have been foreseen, that the owners
of the market did use reasonable care, that this very bizarre and
unique action by Ms. Ottinger was certainly an intervening cause …
and was beyond the foreseeability of anyone that this could have
occurred and anything remotely comparable to it.

Plaintiffs appeal the Trial Court's granting of summary judgment to Defendant.
Plaintiffs claim they were entitled to additional discovery and the Trial Court erred in granting
summary judgment when discovery was incomplete.  Plaintiffs also claim the Trial Court erred in
granting summary judgment because the bench was a dangerous condition, the Market had notice
of this danger, and the injuries and deaths of Clifford Frazier and Azeline Kittrell were foreseeable.

### Discussion

We first discuss Plaintiffs' argument that summary judgment was inappropriate since
additional discovery was needed.  Although the Trial Court never specifically ruled on the oral
request for additional time to conduct discovery, we will assume the request was denied since the
motion for summary judgment was granted.  The standard of review on this issue is whether or not
the Trial Court clearly abused its discretion. *See Hughes v. Effler*, No. E-2000-03147-COA-R3-CV,
2001 Tenn. App. LEXIS 570 at **3, 4 (Tenn. Ct. App. Aug. 7, 2001), *app. for perm. to appeal
denied* Dec. 29, 2001, (citing *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94 (Tenn. 1993)).

The complaints in the present case were filed on May 15 and July 11 of 2000.  The
affidavits of Moore, Messer and Holt were filed on April 5, 2001.  Defendant's motion for summary
judgment was filed on May 14, 2001, almost a year to the date the Frazier complaint was filed.
Plaintiffs deposed Ottinger in June of 2001.  The motion for summary judgment was heard by the
Trial Court on August 24, 2001, over one year and three months after the Frazier complaint was
filed, and over one year and one month after the Kittrell complaint was filed.  Plaintiffs never filed
an affidavit setting forth why they needed additional time for discovery or why this discovery had
not been completed prior to the hearing.  This issue was not brought to the attention of the Trial
Court until the actual hearing was underway.  Rule 56.07 of the Tenn. R. Civ. P. provides as follows:

**56.07.  When Affidavits Are Unavailable.** – Should it appear *from
the affidavits of a party* opposing the motion that such party cannot
for reasons stated present by affidavit facts essential to justify the
opposition, the court may refuse the application for judgment or may
order a continuance to permit affidavits to be obtained or depositions
to be taken or discovery to be had or may make such other order as is
just.  (emphasis added).

This Court addressed a similar set of facts in *Hughes v. Effler, supra.* In *Hughes*, one of the defendants filed a motion for summary judgment with a supporting affidavit on May 2, 2000. The motion was set for hearing on June 12, 2000, but was continued until August 28, 2000, at the request of the plaintiffs. At the August 28 hearing, plaintiffs' attorney made an oral motion requesting additional time for discovery, which was denied. After summary judgment was granted, the plaintiffs moved to have the summary judgment set aside, stating the case had only been pending for five months, discovery had not been completed, and all of the defendants had not yet answered the complaint. This motion was denied. Two days later, counsel for Plaintiffs filed an affidavit setting forth why additional discovery was needed. *Hughes v. Effler*, No. E-2000-03147-COA-R3-CV, 2001 Tenn. App. LEXIS 570 at **2, 3 (Tenn. Ct. App. Aug. 7, 2001). In affirming the grant of summary judgment, we stated:

> The Statement of Undisputed Facts states that Braun did not deviate from the applicable standard of care, as does the affidavit. Plaintiffs filed no response by affidavit or otherwise to rebut this. Numerous cases have refused to give a party relief where their own neglect has caused them to suffer a disadvantage. There is nothing in the record to indicate that the plaintiffs could not have undertaken meaningful discovery in the five month period that this case was pending, nor, do they give any reason as to why they failed to do so. *See Kerney v. Cobb*, 658 S.W.2d 128 (Tenn. Ct. App. 1983); *Ravenwood Homeowners Ass'n v. Bailey*, 1988 WL 87676 (Tenn. Ct. App. Aug. 26, 1988); *Laue v. Richardson*, 1987 WL 9374 (Tenn. Ct. App. Apr. 14, 1987).
>
> We find no abuse of discretion by the Trial Court in refusing to allow another continuance of the Motion. Tenn. R. Civ. P. Rule 56.07 presupposes that the opponent of the motion seeking a continuance will set forth facts in an affidavit essential to justify the continuance.

*Hughes*, 2001 Tenn. App. LEXIS 570 at **4, 5.

In the present case, Plaintiffs did not file an affidavit in accordance with Rule 56.07 prior to the hearing. Plaintiffs offered the Trial Court absolutely no facts supporting why this discovery had not been completed prior to the hearing. There is nothing in the record before us to indicate Plaintiffs did not have sufficient time for meaningful discovery during the more than one year in which these cases were pending. Likewise, there is no indication from the record that Plaintiffs even attempted to depose Moore, Messer, or Holt, or that Defendant did anything to thwart the taking of these depositions. Plaintiffs had the affidavits of these witnesses for four and one-half months prior to the hearing. That Defendants did not respond to Plaintiffs' interrogatories and requests for production of documents does not change this fact in light of Plaintiffs' ability to file

a motion to compel discovery pursuant to Rule 37, an option they chose not to pursue.[1] We also find it relevant that Plaintiffs' counsel stated to the Trial Court, after informing the Trial Court there was some discovery Plaintiffs needed to complete, that "I'm prepared to respond to their motion, piece by piece." In short, Plaintiffs' counsel told the Trial Court he was ready to respond to the motion at that hearing. We find no abuse of discretion by the Trial Court in refusing to grant Plaintiffs additional time to conduct discovery before ruling on the motion for summary judgment.

Next, Plaintiffs challenge the Trial Court's granting of summary judgment to Defendant. The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.
>
> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a

---

[1] Defendant's failure to respond to this discovery certainly would have been a consideration in determining whether to grant more time for discovery had it been included in a Rule 56.07 affidavit filed prior to the hearing.

> genuine issue for trial is not triggered and the motion for summary
> judgment must fail. *See McCarley v. West Quality Food Serv.*, 960
> S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving
> party successfully negates a claimed basis for the action, the non-
> moving party may not simply rest upon the pleadings, but must offer
> proof to establish the existence of the essential elements of the claim.
>
> The standards governing the assessment of evidence in the
> summary judgment context are also well established. Courts must
> view the evidence in the light most favorable to the nonmoving party
> and must also draw all reasonable inferences in the nonmoving
> party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v.
> Hall*, 847 S.W.2d at 210-11. Courts should grant a summary
> judgment only when both the facts and the inferences to be drawn
> from the facts permit a reasonable person to reach only one
> conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.
> 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89. A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)(quoting *Byrd v. Hall*, 847 S.W.2d at 211).

Although owners or occupiers of a business premise are not insurers of their customers' safety, they do have a duty to use reasonable care to protect their customers from unreasonable risks of harm. *Basily v. Rain, Inc.*, 29 S.W.3d 879, 883 (Tenn. Ct. App. 2000). This duty includes maintaining the premises in a reasonably safe condition, either by removing or repairing potentially dangerous conditions, or by warning guests of the existence of a dangerous condition that cannot, as a practical matter, be removed or repaired. *Id*. at 883. The *Basily* Court noted the courts have declined to impose a duty to protect on owners or occupiers of businesses against conditions from which no unreasonable risk of harm can be anticipated. *Id*. "As in any negligence action, we think a risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by a defendant's conduct outweigh the burden upon the defendant to engage in alternative conduct that would prevent the harm." *Coln v. City of Savannah*, 966 S.W.2d 34, 37 (Tenn. 1998)(citing *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995)). Factors to consider when making this determination include: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by defendant; (4) the usefulness of the conduct to defendant; (5) the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; (6) the relative usefulness of the safer conduct; and (7) the relative safety of alternative conduct. *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998). Our Supreme Court in *Coln* went on to explain:

The determination of whether a duty is owed requires a balancing of the foreseeability and gravity of the potential harm against the burden imposed in preventing that harm. *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 901 (Tenn. 1996). Assuming a duty of care is owed, be it a duty to refrain from creating a danger or a duty to warn against an existing danger, it must then be determined whether a defendant has conformed to the applicable standard of care, which is generally reasonable care under the circumstances. "Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending to the particular situation and is to be commensurate with the risk of injury." *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992).

\* \* \* \*

In premises liability cases, application of duty principles resulted in imposing a duty on an owner or possessor of premises to exercise reasonable care under the circumstances to a guest (licensee) or business invitee. The duty includes the responsibility of either removing or warning against any latent or hidden dangerous condition on the premises of which one was aware or should have been aware through the exercise of reasonable diligence. *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994); Smith v. Inman Realty Co., 846 S.W.2d 819, 823 (Tenn. App. 1992).

*Coln*, 966 S.W.2d at 39, 40.

Plaintiffs argue furnishing a bench which adjoins a parking area in and of itself creates an extreme hazard. They also claim Defendant provided insufficient barricades to protect its customers sitting on the bench. Plaintiffs point to the existence of the guardrail protecting the ice machine, and strongly rely on the absence of a guardrail in front of the bench to protect customers.

The facts in the present case undoubtedly are unique and bizarre. We agree with the Trial Court that the accident in question could not have been reasonably foreseen by Defendant. Concrete curbs were installed to prevent cars from pulling up too close to the bench or the Market. Ottinger, who apparently was intoxicated, was driving in reverse and at a high rate of speed. She left Defendant's premises, in reverse, while making a U-turn and entered upon a public road, then returned to Defendant's premises, jumped a concrete curb, and struck the bench from the side. The Trial Court correctly pointed out that no amount of additional barriers in front of the bench, as suggested by Plaintiffs, would have prevented Ottinger's car from coming onto the sidewalk from the side. Ottinger's car destroyed the guardrail in front of the ice machine. If we were to accept Plaintiffs' position, Defendant and every other business or property owner would be required to erect an impenetrable barrier around any bench, sidewalk, walkway, etc., located in a place accessible to

-10-

any out-of-control car. Such a holding would effectively eliminate any requirement of foreseeability in those situations. We decline to do so.

While Deatherage's affidavit creates a genuine issue of material fact as to whether the location of the bench was dangerous, it does not create a genuine issue of material fact with regard to whether or not Defendant reasonably could have foreseen Ottinger's conduct and this accident. *See Tedder v. Raskin*, 728 S.W.2d 343, 348-49 (Tenn. Ct. App. 1987)("[T]he plaintiff must further prove that the landlord's failure to act was the proximate cause of the injury. To meet this burden, the plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the landlord's power more probably than not would have prevented the injury."). We hold that these deaths, however tragic, were at best a remote possibility and not a reasonably foreseeable probability. Accordingly, we affirm the Trial Court's granting of summary judgment to Defendant.

The final issue on appeal is Defendant's assertion that this appeal should be dismissed because Plaintiffs failed to serve the notice of appeal within seven days as required by Tenn. R. App. P. 5(a). Defendant raised this argument by motion in this Court prior to oral argument and the motion was denied. We decline to revisit this issue.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed equally against the Appellants Lassie Frazier, surviving spouse of Clifford Frazier, deceased, for her benefit and the benefit of sons Arthur Frazier, Elmer Frazier, David Frazier, daughters Edna Valentine, Faye Crum, Ada Woody, Gladys Boles and Diana Miller, and Basil Stanton Kittrell, individually and as personal representative of the estate of Azeline Kittrell, and their surety.

_____
D. MICHAEL SWINEY, JUDGE

-11-