IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2002 Session

**LEE KRAFT, as Executor of the Last Will and Testament
of Ms. Helen Bergida, deceased v. EZO-GOTEN, USA, INC.**

A Direct Appeal from the Circuit Court of Davidson County
No. 006-96    The Honorable Walter Kurtz, Judge

_____

No. M2001-03137-COA-R3-CV - Filed December 11, 2002

_____

Personal representative of deceased patron brought this premises liability suit against restaurant owner/occupier alleging that patron tripped and fell from dangerous top step of front stairs to restaurant.  On defendant's motion for summary judgment, the trial judge accorded no weight to the opinion of plaintiff's expert architect, ruled that there was no proof of causation, and granted summary judgment. We find that a reasonable juror could conclude from the circumstantial evidence in the record that patron fell due to tripping on the dangerous top step.  Because the circumstantial evidence creates a dispute as to a genuine issue of material fact, we hold that summary judgment was inappropriate, reverse the trial court, and remand the case.

**Tenn. R. App. P. 3; Appeal as of Right: Judgment of the Circuit Court
Reversed and Remanded**

JOHN A. TURNBULL, Sp. J., delivered the opinion of the court in which PATRICIA J. COTTRELL, J. and WILLIAM BRYAN CAIN, J., concurred.

John W. Nolan and Stanley A. Davis, Nashville, counsel for Appellant

Gordon C. Aulgur, Nashville, counsel for Appellee

<u>Facts and Background</u>

On March 7, 1999, Ms. Helen Bergida was going, along with a group of family and friends, to a birthday party at the Goten Restaurant in the Baker Building at the intersection of West End Avenue and 21st Avenue South in Nashville. The front steps at the entrance to the Goten Restaurant consisted of seven concrete risers. The first six risers on these steps were each six inches high. However, the seventh riser measured seven inches in height. It was on this top step that Ms. Bergida alleged she tripped, causing her to fall down the steps and suffer serious injury. Unfortunately, Ms. Bergida died of other causes after she filed suit, but before making an affidavit or giving other sworn testimony in this cause.

March 7, 1999, was a clear, dry day. Ms. Bergida was holding the handrail as she walked up the steps to the Goten Restaurant, and climbed the first six steps without difficulty. No one has testified they saw Ms. Bergida trip on the top step, but a witness, Morton Cooper, looked up in time to see her falling from the sixth step as he indicated on a diagram exhibit to his deposition. There was no warning that the top riser was an inch or more higher than the first six risers, and it was not painted yellow. The difference in the height of the top riser was not easily observable to one approaching or climbing the steps.

Ms. Bergida had achieved the golden age of 80 years of age at the time of her fall. She was in good health, living alone, able to care for herself, and functioning independently. She had no history of difficulty walking or climbing stairs. In fact, she walked to a nearby grocery store, exercised regularly, and did volunteer work at St. Thomas Hospital. In spite of her age, Ms. Bergida was able to climb stairs without assistance. She baked bread weekly and prepared meals and provided babysitting for her family and friends.

Mr. Henry Bledsoe, an architect with thirty years experience, and an impressive curriculum vitae, measured and photographed the steps and confirmed that "the riser at the seventh and final step is an inch or more higher than the riser for the sixth step." In his affidavit, Mr. Bledsow cited the top riser as a violation of the standard building code provision 1112.3.2:

> There shall be no variation exceeding 3/16 inch in the depth of
> adjacent treads or in the height of adjacent risers and the

tolerance between the largest and smallest riser or between the largest and smallest tread shall not exceed 3/8 inch in any flight.

After describing the lack of uniformity in the treads and risers in the stairs to the Goten Restaurant, Mr. Bledsoe noted there were four places in the stairs which could cause a fall: "At the top riser, at the second tread from the top, at the second tread from the bottom, and at the bottom riser." He expressed the opinion in paragraph 10 of his affidavit: "Walking up or down these stairs, because of the inconsistencies, a person cannot establish a rhythm from one riser or tread to the next and more likely than not caused Ms. Bergida's fall and resulting injuries." Mr. Bledsoe went further and listened to a tape recorded statement given by Ms. Bergida to an investigator from the restaurant and read the depositions of five companion witnesses. Mr. Bledsoe swore in his affidavit in paragraph 12: "They all indicate that Ms. Bergida was traversing the top two steps at the time of her fall. (emphasis added) Therefore, it is my firm opinion that the cause of her fall was the variant in the height of the risers, which violated the standard building code."

The trial judge, after taking defendant's motion for summary judgment under advisement, accorded the architect's affidavit no weight. Wrote the trial judge:

> The plaintiff has used the architect's affidavit as a conduit in an attempt to get into evidence a hearsay statement made by Ms. Bergida about her memory of the fall. This is impermissible. See *Benson v. Tennessee Valley Electric Cooperative*, 868 SW2d 630, 641 (Tenn. App. 1993). More importantly, however, the court finds that the affidavit should be given no weight. This affidavit simply attempts to tell the fact finder how people might trip on the stairs and then postulates as to how this fall took place. The court is of the opinion that jurors are well equipped to make judgments about falls on stairs. This affidavit will not "substantially" assist the trier of fact in resolving the factual issue in this case. See, T.R.E. 7.02.

3

The trial judge granted summary judgment to the defendant concluding his reasoning as follows:

> The counter to the populist argument that all cases should go to the jury is the observation that a jury trial is an expensive and time-consuming way to resolve issues involving interpretations of law and that the cherished right to a jury trial should be reserved for those cases in which there is a viable dispute for the jury to resolve. We all owe an obligation to the justice system and to the jurors that serve it to insure that cases unsupported by appropriate facts are culled out. It is all too easy to submit the case to a jury where the law disfavors the claim but the emotional dynamic of the case might cause the jury to disregard the law. Only for those cases where the lack of factual dispute make the application of the law a certainty do we reserve summary judgment. This case is one of those.

The case presents two issues for resolution by this court:

1. Did the trial court err in according no weight to the expert opinion?

2. Did the trial court err in finding no dispute of material fact as to the issue of causation?

### Expert Opinion

The standard of review to be applied to a trial judge's determination of the admissibility of expert testimony is whether the ruling amounted to an abuse of discretion. Before reversal, the record must show that a judge applied an incorrect legal standard or reached a decision which is against logic or reasoning and caused an injustice to the party complaining. See *State v. Coley*, 32 S.W.3d 831, 833 (Tenn. 2000).

In determining whether to admit or exclude expert opinion, the trial court must first look to the legal standards set forth in Tennessee Rule of Evidence 702, which provides:

4

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

It is not disputed that Mr. Bledsoe, as an experienced architect, possessed the knowledge, skill, experience, training, and education to accurately photograph and measure the steps in question. Neither is it disputed that Bledsoe was qualified to recognize and cite the applicable building code and demonstrate a violation of the code. Instead, it is his opinion on causation which is challenged. Mr. Bledsoe's first expressed opinion on causation is: "Walking up or down these stairs, because of the inconsistencies, a person cannot establish a rhythm from one riser to tread to the next, and more likely than not caused Ms. Bergida's fall and resulting injuries." The first clause of this opinion - "because of the inconsistencies, a person cannot establish a rhythm from one riser or tread to the next" is, we believe, within the expertise of this experienced architect. Mr. Bledsoe had designed hotels, restaurants, office buildings, manufacturing facilities, shopping centers, and retirement centers. Appropriate pedestrian traffic flow is an essential part and focus of the design of such buildings, as is a knowledge of buildings and accessability codes. Thus, it cannot be said that Mr. Bledsoe did not have sufficient expertise to render this portion of his opinion. Certainly Mr. Bledsoe had specialized knowledge superior to that of the common understanding of a trier of fact regarding the necessary rhythm for safe pedestrian traffic on stairs. Accordingly, we find that the first clause of this opinion not only constitutes circumstantial evidence itself, but it would also substantially assist the trier of fact in assessing and drawing inferences from other circumstantial evidence in this case. See _Hamblen v. Davidson_, 50 S.W.3d 433, 440 (Tenn. App. 2000).

In sharp contrast, the last portion of this opinion ("and more likely than not caused Ms. Berdiga's fall and resulting injuries") is highly problematic. Because we do not have before us a deposition or other cross examination of Mr. Bledsoe, we do not know whether he had scientific or other underpinnings outside the common understanding of the jury upon which to base his opinion of causation. The record contains no evidence that Mr. Bledsoe had education or experience in safety, human factors analysis, or cause and effect of injuries. The trial judge held that the opinion would not "substantially assist" the trier of fact in resolving the factual issue (causation) in that jurors are well equipped to make judgments

5

about falls on stairs. We cannot say, on this record, that this portion of Mr. Bledsoe's opinion on causation was admissible, or that the trial judge would have abused his discretion in excluding it. [1]

In paragraph 12 of his affidavit, Mr. Bledsoe again expressed the opinion that the cause of Mrs. Berdiga's fall was the variation in height of the risers, which violated the standard building code. He based this opinion, at least in part, on the inadmissible hearsay statement given by Mrs. Berdiga to the investigator. The trial judge found impermissible this use of the architect's affidavit "as a conduit in an attempt to get into evidence a hearsay statement made by Ms. Bergida about her memory of the fall." The affidavit does not reveal the details of Ms. Bergida's memory expressed to the investigator, but does indicate the five witnesses and Ms. Bergida's statement <u>all</u> indicate that Ms. Bergida was traversing the two top steps at the time of her fall.

T.R.E. 703 permits an expert to base an opinion or inference on facts or data "perceived by or made known to the expert at or before the hearing." The rule points out that the facts or data relied upon by the expert need not be admissible in evidence "if of a type reasonably relied upon by experts in a particular field in forming opinions or inferences on the subject." The facts or data may not stem from an untrustworthy source. If the expert bases an opinion on evidence that is not independently admissible "the trial judge should either prohibit the jury from hearing the foundation for the testimony or deliver a cautionary instruction." <u>Benson v. Tennessee Valley Elec. Coop.</u>, 868 S.W.2d 630, 641 (Tenn. Ct. App. 1993). Here, the appropriate action of the trial court would have been to prohibit the expert from revealing to the jury that Ms. Bergida had even made a statement if the opinion was otherwise admissible. To reveal that a statement had been made by Mrs. Bergida or the contents of such statement would result in unfair prejudice to the defendant which would likely not be cured by a cautionary instruction.

Other reasons, too, permit the exclusion of the opinion. The trial judge can read and understand the witnesses' testimony contained in the depositions. An expert's opinion about what other witnesses say does not substantially assist the court or trier of fact. Additionally,

---

[1] The trial judge did not technically rule the opinion inadmissable. Instead, he chose to "accord no weight" to the expert opinion. We will address below the question of whether the trial judge may "weigh" evidence on motion for summary judgment.

6

we cannot say the trial judge abused discretion in reasoning that "jurors are well equipped to make judgments about falls on stairs" and that therefore the inference of causation contained in the opinion would not substantially assist the jury in resolving that issue. [2]

## Summary Judgment

Summary judgments enjoy no presumption of correctness on appeal. Therefore, reviewing courts must decide anew whether the requirements of Tenn. R. Civ. P. 56 have been met. See *Baisley v. Rain*, 29 S.W.3d 879, 882 (Tenn. Ct. App. 2000). We are required to consider the evidence in the light most favorable to Ms. Bergida, and we must resolve all inferences in her favor. Summary judgment should not be granted if any doubt exists with regard to the conclusions to be drawn from the evidence. See *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). "If the mind of the court entertains any doubt whether or not a genuine issue exists as to any material fact, it is its duty to overrule the motion (citations omitted). The court is not to 'weigh' the evidence when evaluating a motion for summary judgment." *Byrd v. Hall*, supra, p. 211.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor. *Byrd v. Hall*, supra, p. 212. "The purpose of summary proceeding is not the finding of facts, or the determination of conflicting inferences reasonably to be drawn from those facts." *Byrd v. Hall*, supra, p. 216 (emphasis added). An inference is defined as "the process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted." See *Thompson v. Adcox*, 63 S.W.3d 783, 790. (Tenn. Ct. App. 2002); *Blacks Law Dictionary*, 778 (6th Ed. 1990). Our Supreme Court has defined an inference as "a permissible deduction from evidence which a jury may accept or reject or accord such probative value as it desires." *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992). A jury may infer a causal connection

---

[2] No objection to, motion to quash, or motion to strike the expert affidavit or any portion of it was filed by the defendant. The trial judge has the inherent authority to *sua sponte* rule on the admissibility of evidence, without an objection being raised. It is, however, good practice to closely review an expert opinion affidavit and make appropriate objections since trial judges are not all pro-active in initiating admissibility inquires.

7

through the use of circumstantial evidence. See *Hamblen v. Davidson*, 50 S.W. 3d 433, 440 (Tenn. App. 2000).

The circumstantial evidence in this case does not exclude every other possible cause, but it does present a sound logical basis for the inference that the defective step caused or contributed to the cause of Ms. Bergida's fall. The evidence at trial may show that Ms. Bergida suffered mini-strokes; that she negligently failed to hold the handrail as she approached the top step; or even that someone else pushed or jostled her as she got to the top step. Some other logical inference may be drawn from the fully developed evidence. It will, however, be for the jury to determine whether the uneven riser at the top step is the more likely cause of her fall than any other explanation. See T.P.I. 3 - Civil 2.02. The trial judge, on motion for summary judgment, does not weigh the strength of competing inferences.

Taken in the light most favorable to Ms. Bergida, the evidence shows that the set of steps in question failed to meet code, contained inconsistencies which did not permit a person ascending them to establish a rhythm from one riser or tread to the next, and was especially dangerous at the top step where the riser was a full inch higher than the others. We have evidence that Ms. Bergida fell from the next to top tread, exactly where she could have tripped on the too-high riser. We have evidence that Ms. Bergida was a healthy, active elderly lady who had not before had difficulty climbing steps. She ascended the steps at a normal rate holding the handrail, and climbed the first six steps without difficulty. A reasonable person could logically conclude that the unsafe top riser caused or contributed to her fall. In order to survive this motion for summary judgment, plaintiff does not need an eye witness who observed Ms. Bergida catch her toe on the too-high top riser. Sufficient circumstantial evidence exists in this record to create a genuine issue of material fact for trial as to causation.

## Conclusion

On summary judgment, a trial judge is not to weigh evidence or weigh the relative strength of competing logical inferences which may be drawn from the evidence. Nor is the trial judge to be concerned on summary judgment with the emotional dynamic of a case, or be worried that the jury might disregard the law. Summary judgment is not the appropriate vehicle to be used by the trial court to cull a weak or even a razor-thin case. Once the proof is fully developed, juries have little difficulty in the culling process, and if the jury fails to

8

follow the law or reaches a conclusion which is not supported by a preponderance of the evidence, the trial judge then exercises thirteenth juror responsibilities.

We reverse the grant of summary judgment and remand the case to the trial court for further proceedings consistent with this opinion. Costs on appeal shall be paid by the defendant.


_____
John A. Turnbull, Sp. Judge

9