MARION SHOFNER, Individually )
and as personal representative of )
the estate of Danny Shofner, )
deceased, )
                                    )      Appeal No.
        PLAINTIFF/APPELLANT,        )      01-A-01-9609-CV-00437
                                    )
v.                                  )      Bedford Circuit
                                    )      No. 7048
RED FOOD STORES (TENNESSEE),        )
INC., CORKER PROPERTIES III         )
LTD. and CORKER DEVELOPMENT         )
CORPORATION,                        )
                                    )
        DEFENDANTS/APPELLEES.       )

**FILED**

October 31, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FOR THE CIRCUIT COURT OF BEDFORD COUNTY

AT SHELBYVILLE, TENNESSEE

THE HONORABLE LEE RUSSELL, CIRCUIT JUDGE

DOYLE E. RICHARDSON
Rogers, Richardson & Duncan
100 North Spring Street
Manchester, Tennessee 37355
        ATTORNEY FOR PLAINTIFF/APPELLANT

PATRICK A. FLYNN
P.O. Box 90
Columbia, Tennessee 38402-0090
        ATTORNEY FOR DEFENDANTS/APPELLEES

AFFIRMED AND REMANDED

SAMUEL L. LEWIS, JUDGE

This is an appeal from the decision of the Bedford County Circuit Court. Plaintiff/appellant, Marion Shofner, claims the circuit court erred when it granted directed verdicts in favor of defendant/appellees, Corker Properties III, Ltd. ("Corker Properties") and Corker Development Corporation ("Corker Development"). Plaintiff also claims the court erred in ordering her to pay discretionary costs. The facts out of which this matter arose are as follows.

Danny Shofner was shot and killed on 24 April 1987 in the parking lot of the shopping center occupied by defendant, Red Food Stores (Tennessee), Inc. ("Red Food"). Corker Properties owned the shopping center, and Corker Development managed the shopping center. Corker Properties retained responsibility for the common areas, including the parking lot. Michael Compton, Corker Development's property manager, hired security on two occasions, the annual Walking Horse Celebration and Halloween. He also testified he placed a small "No Loitering" sign in the parking lot and gave the police permission to patrol the parking lot. Mr. Compton could not say who he spoke to at the police station. For at least a year prior to the shooting, young people met in the parking lot on Friday and Saturday nights to socialize. There was testimony the young people were "good kids" and there was "some" beer drinking.

Young people began arriving at the parking lot between 8:00 and 9:00 p.m. on 24 April 1987. Around 9:30 p.m. a fight broke out between several young men. Danny Shofner pulled up shortly after the fight began. After exiting his car, one of the young men, Carl Pendergrast, threatened Shofner and hit him on the arm with a baseball bat. One of the young people spotted the police and the aggressors, including Pendergrast and T. J. Hillis, left, but threatened to return. Officer Rufus Morton of the Shelbyville Police Department arrived on the scene. Several of the young people told the officer about the fight. Officer Morton told the crowd he would have someone keep an eye on the parking lot. The crowd did not disperse.

Shortly after 11:00 p.m., Pendergrast and the other two young men returned to the parking lot. Pendergrast took out a .22 caliber rifle and pointed it at Shofner. Shofner then pulled out a pistol, showed it to Pendergrast, and returned the pistol to

his pocket. Hillis and Pendergrast began fighting over the rifle. Pendergrast gained control of the rifle and shot Shofner. Hillis began hitting Shofner with a baseball bat, and Pendergrast shot Shofner a second time. Neither Shofner nor his assailants were customers of Red Food on the night in question.

Plaintiff filed a wrongful death action against Red Food, Corker Properties, and Corker Development on 22 April 1988. Plaintiff voluntarily dismissed the case on 21 September 1993, but re-filed in the Bedford County Circuit Court on 1 September 1994. Defendants filed a joint answer denying fault on 12 October 1994. Later, they filed a motion for summary judgment which the court denied.

A jury heard the case on 8 July 1996. At the end of Plaintiff's proof, Defendants moved for a directed verdict. The court granted the motion with respect to Corker Development and Corker Properties, but overruled the motion with respect to Red Food. The jury, however, found that Red Food was not at fault. The court entered a final judgment on 12 July 1996. On 2 August 1996, Defendants filed a motion for discretionary costs, and the court awarded Defendants $1,733.80. Plaintiff filed a timely notice of appeal.

## Discretionary Costs

Absent an error of law, this court reviews decisions awarding discretionary costs using the abuse of discretion standard. ***See Lock v. National Union Fire Ins. Co.***, 809 S.W.2d 483, 490 (Tenn. 1991). Plaintiff contends the court should not have assessed discretionary costs against her individually because she brought the suit as the personal representative of the Danny Shofner estate. Defendants recognize there is an exception for a plaintiff suing as a personal representative, but contend Plaintiff brought the action both individually and as personal representative.

It is the opinion of this court that Plaintiff brought the suit individually and as Danny Shofner's personal representative. As such, the trial court could assess costs against her in her individual capacity. Moreover, it is the opinion of this court that the trial court did not abuse its discretion.

## Directed Verdicts

"The standard of review for a directed verdict is well settled. A court must take the strongest legitimate view of the evidence in favor of the opponent, allow all reasonable inferences from that evidence in the opponent's favor, discard all countervailing evidence and then, affirm the directed verdict when reasonable minds could draw but one conclusion." *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812, 817 (Tenn. App. 1995).

The trial court relied on *Cornpropst v. Sloan* , 528 S.W.2d 188 (Tenn. 1975), in granting the directed verdicts in favor of Corker Development and Corker Properties. The *Cornpropst* court stated the relevant rule of law as follows:

> There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises.

*Cornpropst*, 528 S.W.2d at 198. In a later case decided after the filing of the final judgment in this case, the Tennessee Supreme Court described the *Cornpropst* rule as "obsolete." *McClung v. Delta Square Limited Partnership,* 937 S.W.2d 891, 900 (Tenn. 1996). The *McClung* court explained when a duty arises:

> A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

*Id.* at 902. The court then continued and explained how courts should determine the extent of the duty if one arises. The court stated: "In determining the duty that exists, the foreseeability of harm and the gravity of harm must be balanced against the commensurate burden imposed on the business to protect against that harm." *Id.*

We must now determine whether a duty arose and, if so, the extent of that

4

duty.[1]  It is the opinion of this court that a duty did not arise because Defendants neither knew or should have known from their observations or past experience that criminal acts were reasonably foreseeable.  In order to apply the law to the facts, we must first make certain assumptions.  Defendants retained control over the parking lot, therefore; we must assume they knew of those things they should have observed.[2]  That is, we must assume Defendants knew young people congregated in the parking lot on Friday and Saturday nights and there was some beer drinking because, as the controllers of the parking lot, Defendants should have observed this activity.

It is Plaintiff's contention that this knowledge alone was enough to trigger the imposition of a duty under *McClung*.  We can not agree.  The argument is simply too tenuous.  This court can not conclude that criminal acts against the shopping center's customers are reasonably foreseeable simply because young people hang out at a remote area of the parking lot and drink some beer.  Moreover, the evidence in the record supports the conclusion that Plaintiff's contention lacks merit.  Most important, the evidence reveals there were no criminal acts reported in the shopping center's vicinity prior to the shooting despite the fact that young people had been meeting at the parking lot for at least a year.  Finally, Plaintiff even described the young people as "good kids."

For these reasons, it is the opinion of this court that the trial court properly granted the directed verdicts.  Even after taking the strongest legitimate view of the evidence in favor of Plaintiff, we must conclude that reasonable minds could only determine Defendants did not have a duty in this case.

Therefore, it follows that the judgment of the trial court is affirmed, and the case is remanded to the trial court for any further necessary proceedings.  Costs on appeal are taxed to plaintiff/appellant, Marion Shofner.

---

[1] There is no question that the holding in *McClung* applies to the instant action.  The *McClung* court expressly held that its decision would apply to all cases on appeal.  *See McClung v. Delta Square Ltd.  Partnership*, 937 S.W.2d 891, 905 (Tenn. 1996).

[2] There is no direct evidence that Corker Properties gave Corker Development any control over the security of the shopping center, however; such an inference is reasonable from all of the evidence in the record.

_____

SAMUEL L. LEWIS, JUDGE

CONCUR:

_____

BEN H. CANTRELL, JUDGE


_____

HENRY F. TODD, P.J., M.S.