IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 5, 2005 Session

## KEVIN EASLEY v. LARRY C. BAKER AND GARY H. BAKER d/b/a LEGEND'S BAR AND GRILL

Appeal from the Circuit Court for Davidson County
No. 02C-1829      Barbara N. Haynes, Judge

_____

No. M2003-02752-COA-R3-CV - Filed March 24, 2005

_____

The unsuccessful Plaintiff, Kevin Easley, appeals the trial court's grant of summary judgment in favor of Larry G. and Gary H. Baker, d/b/a Legend's Bar and Grill.  On appeal, Easley argues that the record presents a genuine issue of fact on the question of whether Defendants provided adequate notice of a dangerous condition.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., joined.

Tusca R.S. Alexis and Luvell L. Glanton, Nashville, Tennessee, attorneys for the appellant, Kevin Easley.

Randolph A. Veazey, Nashville, Tennessee, attorney for the appellees, Larry C. Baker and Gary H. Baker d/b/a Legend's Bar and Grill.

**OPINION**

On June 25, 2002, Kevin Easley filed a Complaint in Davidson County Circuit Court alleging a slip and fall at Legend's Bar and Grill, occurring on or about February 2, 2002.  Mr. Easley alleged that the defendants "made no attempt to correct the wet floor or to warn the plaintiff or other patrons of the existing dangerous condition of the restroom floor" and that the plaintiff fell on this wet floor upon entering the restroom.  The Complaint specifically alleges that there was a Wet Floor sign located in the restroom, "but it was not in the view of patrons entering the restroom."

Defendants Baker answered on July 19, 2002, denying the allegations of the Complaint and raising Plaintiff's comparative fault as a defense.  The plaintiff's deposition was taken, and on July 7, 2003, Defendants filed a Motion for Summary Judgment with the following statements of undisputed facts attached thereto:

1. On February 2, 2002 Plaintiff Kevin Easley ("Easley") went to the Legend's Bar & Grill ("Legend's") located at 3436 Lebanon Road in Hermitage to watch the Super Bowl (Easley Dep, p. 23 and Complaint, Para. 3).

RESPONSE:

2. According to Mr. Easely, round [sic] 7:00 p.m. he got up from his table and went to the men's room and while walking up to the urinals he slipped on water which was on the floor (Easely Dep, p. 23-24).

RESPONSE:

3. Mr. Easley says the water was in a puddle about 5 feet in diameter and approximately one-half (½) inch deep (Easley Dep, p. 24-25).

RESPONSE:

4. Mr. Easley did not know where the water came from or how long it had been there (Easley Dep, p. 25).

RESPONSE:

5. According to Mr. Easley he was walking through the water toward the left hand of two urinals (Easley Dep, p. 56 when he slipped and although he did not fall, twisted and injured his low back (Easley Dep, p. 27, 29 & 56 and Exh. 2 to Easley Dep).

RESPONSE:

6. Mr. Easley says that he had taken at least two steps into the water, was within six inches (6") of the urinals when he slipped, and that although he did not see the water, he could have seen it had he looked (Easley Dp, p. 24-25, 27 & 29).

RESPONSE:

7. Mr. Easley says that there was a yellow "wet floor" sign to the right of where he fell which was actually sitting in the water (Easley Dep, p. 26).

RESPONSE:

8. Mr. Easley says the sign was yellow, 18 inches tall, and Mr. Easley recognized it as a "wet floor" sign (Easley Dep, p. 42 & 48).

RESPONSE:

9. Although Mr. Easley claims that he did not see the sign before his fall, he admits that he could have seen it if he had looked and there was nothing to block one's view of the sign as one would turn to walk toward the urinals (Easley Dep, p. 40 & 56).

RESPONSE:

10. Mr. Easley was not drinking at the time of the incident and he has no vision problems and did not wear glasses (Easley Dep, p. 23 & 40).

RESPONSE:

11. On June 25, 2002, Mr. Easley brought suit against the Defendants alleging that they were guilty of negligence by failing to correct or warn of the water on the floor in the men's room (Complaint, Para. 4-7 and 11).

RESPONSE:

On August 15, 2003, Easley made his initial response to the defendants' motion. In that response, the only additional statements made by Plaintiff were that (a) the water appeared to be on the floor for some length of time and (b) that Mr. Easley was walking and looking at the urinals at the time he slipped. On October 29, 2003, Easley filed a "Plaintiff's Supplemental Response to Defendant's Motion For Summary Judgment," alleging the following:

1. Plaintiff deposed Allen McQueen on October 20, 2003. Mr. McQueen is an employee of the Defendant, Legend's Bar & Grill and has been employed there for the past four years (See deposition of Allen McQueen, page 3, lines 20-25; page 4, lines 1-2). There was a lot of traffic at the restaurant at the time of the incident. (See deposition of McQueen, page 6, lines 15-19; page 8, lines 6-11).

2. Mr. McQueen testified that he put a wet floor sign near the entrance to the restroom and one inside the restroom. (See deposition of McQueen, page 23-25; page 10, lines 1-25; page 11, line 1-2). He placed the wet floor sign a distance from the urinal. (See exhibit 1 of McQueen's deposition). He never re-mopped the area where the Plaintiff slipped. (See deposition of McQueen, page 11, lines 3-25; page 12, lines 1-17). His testimony is contrary to the information in the incident report which was attached to Plaintiff's first response in opposition to Defendant's summary judgment motion. The incident report reveals that the bathroom floor was mopped in order to correct the condition which caused the Plaintiff to slip. The incident report reveals that the floor was slippery.

3.  Plaintiff submits that there is a genuine issue of material fact and that the Defendant's motion for summary judgment should be denied.

It is well settled that an owner or occupier of land is not an absolute insurer of Plaintiff's safety on his premises. *See Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994).  While an owner or occupier has a duty to exercise reasonable care with regard to business invitees, this duty is satisfied with the removal of known dangers or warning against latent or hidden dangerous conditions of which the landowner knew or should have known in the exercise of reasonable diligence. *See Eaton*, 891 S.W.2d at 593-94; *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).  This duty, however, coexists with the duty of a plaintiff not to proceed into a known danger. *Eaton*, 891 S.W.2d at 594.  In this respect, we find the following excerpt from Mr. Easley's deposition of note:

Q.    When you visited the rest room at the time of your slip incident, had you been in that rest room before that time?

A.    No.

Q.    Upon what did you slip?

A.    Water.

Q.    Where was the water?

A.    By the urinals.

Q.    How big an area of water was on the floor?

A.    Roughly 5 feet in diameter.

Q.    Did you see the water?

A.    No.

Q.    You didn't see it before you slipped?

A.    No.

Q.    Did you see it after you slipped?

A.    Yes

Q.    Why could you have not seen it before you slipped?

A.    I was looking at the urinals.

-4-

Q.        If you had looked at the floor, would you have seen it?

A.        Yes.

Q.        Now, this 5-foot-diameter water in the floor, describe it for me as best you can.  Was it damp or was it a puddle?

A.        It was about a half inch.

Q.        Do you know where that water had come from?

A.        No.

Q.        Do you know how long the water was there?

A.        No.

Q.        Do you know if anyone at Legends knew it was there?

A.        Yes.

Q.        Who at Legends knew it was there?

A.        I don't know who.

Q.        Well, how do you know it was someone from Legends that knew of the water?

A.        They put a "wet floor" sign there.

Q.        What kind of "wet floor" sign was up?

A.        It was a yellow, stand-up sign.

Q.        Where was this sign?

A.        It was – it was in the puddle of water next to the bathroom stall.

In addition, Plaintiff goes on to state that having perceived a puddle of water at the first step, he continued in that direction.

Q.        So you had already walked through a part of the water; is that correct?

A.        Yes, yes.

Q.     Had you made several steps into the water?

A.     A couple.

Q.     Now, you slipped, you did not fall; is that right?

A.     Right, I did not fall.

Q.     You caught yourself on the wall?

A.     Yes.

Q.     Was there any handrail on the wall or were you just able to brace yourself on the wall?

A.     I braced myself.

Q.     Now, this area where these two urinals are, is it narrow enough that you could touch both walls or just one wall?

A.     I had touched the wall in front of me and the wall over here (indicating).

Q.     All right.  You had touched the wall, for the sake of the record, that would be immediately behind the urinal – --

A.     Yes.

Q.     – – and the wall that would be to your immediate left as you were standing at the urinal?

A.     Yes.

Q.     Had you already gotten to the urinal to do what you were doing when you slipped?

A.     No.

Q.     You were still walking toward it?

A.     Yes.  I was – – go ahead.

Q.     No, I didn't mean to interrupt you.

A.          I was within 6 inches from the urinal.

Contrary to the allegations made in the supplemental response, we find no material factual dispute as to the testimony proffered by employee McQueen:

Q.    Had anybody verbally told you how often you would have to check the restrooms?

A.    When I first started I was told about every hour.

Q.    Okay.  And what were you told about that?

A.    Make sure it's clean, toilet paper, soap, paper towels and clean floors.

Q.    Okay.  And how often did you check the restroom?

A.    I go in – – I check it about every hour.

Q.     Did you have anything that you used to check off when you would check the restrooms?

A.    No, sir.

Q.    Okay.  Did you all have any plumbing problems in that restroom?

A.    No, sir.

Q.     Now, was there a wet floor sign in that restroom at the time of this incident?

A.    Yes, sir.

Q.    Why was it there?

A.    Because I had cleaned up a spill, a urinal overflowed.

Q.    And why did it overflow?

A.    Someone had stuck toilet paper in it.

Q.    And what time was that, do you know?

A.    No, sir.

-7-

Q. Okay. How long had it been since you had visited the restroom prior to this incident?

A. I had just walked out, went back to the dish room and I heard a guy fell in the bathroom.

Q. You heard him fall?

A. No, I heard from somebody talking that a person complained that they fell in the bathroom.

Q. Okay. You said you had just left the restroom?

A. Couldn't have been no more than 15 minutes.

Q. And how many wet floor signs had you put in the restroom?

A. I put one inside and one right outside the door, so that makes two.

Q. Okay. And where had you put that sign at outside the restroom?

A. It's a hallway – – you got a restroom – – got two way, one for the ladies and one for men, and it's a water fountain, I put it right where you got to walk in to go to the restrooms – – the restrooms.

Q. Tell me about what you had heard concerning this incident right after the incident.

A. I just heard a guy complaining he fell in the restroom, in the bathroom.

Q. Who told you that?

A. I can't remember.

Q. Okay. Where were you when you heard this?

A. In the dish room washing dishes.

Q. Okay. And did you – – what did you do, if anything, at that time?

A. What did I do when I heard? I went and look [sic] at the floors.

Q. You and who else?

A.     Just me.

Q.     Okay.  And tell me about what you saw.

A.     What I saw.  All I saw was the two wet floor signs, the bathroom was empty, that's all I saw.

Q.     And what did you do, if anything?

A.     What did I do?

Q.     Yes, sir.

A.     I just left it.  There wasn't nothing to do.  I left the wet floor signs there for a while.

Since this appeal comes to the Court from a grant of summary judgment, our duty on review is clear and well-settled:

> Since our inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn.R.Civ.P. 56 have been met.  *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991).  Tenn.R.Civ.P. 56.03 provides that summary judgment is only appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Anderson v. Standard Register Co.*, 857 S.W.2d 555,559 (Tenn.1993).  The moving party has the burden of proving that its motion satisfies these requirements. *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn.1991).
>
> The standards governing the assessment of evidence in the summary judgment context are also well established.  Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor.  *Byrd*, 847 S.W.2d at 210-11.  Courts should grant a summary judgment only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion. *Id.*

*Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).  *See Staples v. CBL and Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn.2000).

The first question in a negligence case involves a duty of care owed by the defendant to the plaintiff.  *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn.1998).  Whether a defendant owes the

plaintiff a duty of care is a question of law to be determined by the court. *Rice v. Sabir*, 979 S.W.2d 305, 309 (Tenn.1998).

> Duty is the legal obligation a defendant owes to a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm. *See McClung v. Delta Square Ltd. Partnership.*, 937 S.W.2d at 894; *McCall v. Wilder*, 913 S.W.2d at 153. In assessing whether a duty is owed in a particular case, courts must apply a balancing approach, based upon principles of fairness, to identify whether the risk to the plaintiff was unreasonable. *See Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn.1997). This Court has stated that a "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall v. Wilder*, 913 S.W.2d at 153; *Rice v. Sabir*, 979 S.W.2d at 308. The court must consider several factors in determining whether a risk is an unreasonable one, including:
>
> > the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance of social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.
>
> *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn.1998); *McCall v. Wilder*, 913 S.W.2d at 153.

*Staples v. CBL & Associates, Inc.*, 15 S.W.3d at 89.

In considering the "foreseeable probability of the harm" portion of the duty analysis, the line between matters of law and matters of fact has become increasingly thin and faded as the common law has developed. In 1998, the Supreme Court said:

> The duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against "conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither know about nor could have discovered with reasonable care." *Prosser and Keeton on Torts, supra,* § 61 at 426. In this regard, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id.* at 426-27. As we explained in *Doe v. Linder Const. Co.*, 845 S.W.2d 173, 178 (Tenn.1992):

-10-

Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. '[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, *and that some action within the [defendant's] power more probably than not would have prevented the injury.'*

(emphasis added) (citations omitted)

*Rice v. Sabir*, 979 S.W.2d at 309.

When a case has been tried on its merits without the intervention of a jury, the element of foreseeability merges in large measure with the factual determinations of the effects of personal conduct. *See Dobson v. State*, 23 S.W.3d 324 (Tenn.Ct.App.1999). Such luxury does not exist, however, when summary judgment is at issue and foreseeability, as an element of duty, must be analyzed within the restrictive parameters of a question of law.

In analyzing the duty question in premises liability cases, this Court observed:

Owners or occupiers of business premises are not insurers of their customers' safety. *See McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 902 (Tenn.1996); *Shofner v. Red Food Stores (Tenn.), Inc.*, 970 S.W.2d 468, 470 (Tenn.Ct.App.1997). They do, however, have a duty to use reasonable care to protect their customers from unreasonable risks of harm. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn.1998); *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn.1984); *Jackson v. Bradley*, 987 S.W.2d 852, 854 (Tenn.Ct.App.1998). This duty includes maintaining the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn.1996); *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn.1994).

The courts, exercising their responsibility for determining whether a legal duty exists, have declined to impose a legal duty on owners and occupiers of business premises in two circumstances. First, they have declined to impose a duty to protect against conditions from which no unreasonable risk of harm can be anticipated. *See Rice v. Sabir*, 979 S.W.2d at 309. A risk of harm is unreasonable if the foreseeable probability and gravity of the harm outweigh the burden imposed on the defendant to engage in alternative conduct that would have prevented the harm. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Jackson v. Bradley*, 987 S.W.2d at 854. Second, they have declined to impose a duty when the occupier neither knew about nor could have discovered the condition in the exercise of reasonable care. *See Rice v. Sabir*, 979 S.W.2d at 309. The existence of a dangerous condition alone will not give rise to a duty "unless it is shown to be of such a character or of such duration

-11-

that the jury may reasonably conclude that due care would have discovered it." *Rice v. Sabir*, 979 S.W.2d at 309. Thus, plaintiffs in premises liability cases must generally prove that the condition existed for such a length of time that the owner or occupier knew or, in the exercise of ordinary care, should have known of its existence. *See Hardesty v. Service Merchandise Co.*, 953 S.W.2d 678, 682 (Tenn.Ct.App.1997).

*Basily v. Rain, Inc.*, 29 S.W.3d 879, 883-84 (Tenn.Ct.App.2000).

The case at bar does not present on its facts, under summary judgment standards, a difficult analysis, even if one concedes the existence of a duty. Accepting the facts in the light most favorable to the plaintiff, we have a plaintiff who is cold sober and unimpaired, and who asserts no difficulty with the lighting within the restroom. Between him and the urinal is a five-foot-wide, one-half-inch-deep puddle of water on the tile floor. Sitting to his right and within the five-foot-wide puddle of water is an 18-inch tall "wet floor" sign. He walks into the water and takes "a couple of steps" in the water and reaches a point six inches from the urinal. He then slips and injures himself. He sees the urinal, but sees neither the five-foot-wide, one-half-inch-deep puddle of water nor the 18-inch tall "wet floor" sign that is in the puddle. He takes not one, but at least two steps into the one-half-inch-deep puddle of water, moving to within six inches of the urinal before he slips.

The defendant is not an insurer of the safety of persons on his premises. He has a duty to repair known defects on the premises or a duty to warn of the existence of such defects. Aside from locking the restroom door, it is difficult to imagine what further steps defendant could have taken to warn patrons of a condition on his premises that was in plain view as the patron approached the urinal.

In *Grizzell v. Foxx*, 348 S.W.2d 815 (Tenn.Ct.App1961), the landlord had allowed snow and ice to accumulate in the common passageway of an apartment complex, and Plaintiff walking through the snow and ice slipped and fell. The Court, recognizing the duty of the landlord to keep the common passageways in good repair and safe condition, held that a jury question was presented as to both negligence by the landlord and contributory negligence by the tenant. The Court reasoned that the tenant had to use the common walkway in order to leave the premises, and if the act of walking through the snow and ice-covered passageway was negligence *per se*, Plaintiffs would become captives in the apartment building. The case at bar is clearly distinguishable from *Grizzell*. When Plaintiff entered the restroom at Legend's, he had to execute an expanded U-turn to his right in order to reach the urinals. When he passed through the entrance, he turned to his right and walked past two toilet stalls on his right before executing another right turn to face the two urinals. There is no evidence that the two toilet stalls on his right as he entered the restroom were occupied, and once he cleared the two stalls and turned to his right, both the accumulated water and the "wet floor" sign standing in the accumulated water were in plain sight. He was no "captive" in the restroom as there is no evidence that the toilet stalls were not available for his purposes or that his need for immediate urination compelled his action.

-12-

In *Hellon v. Trotwood Apartments, Inc.*, 460 S.W.2d 372 (Tenn.Ct.App.1970), plaintiff tenant faced a situation where rainfall had caused water to accumulate on the surface of the parking lot and the sidewalk leading to his apartment. As he walked toward the apartment, he came upon a section of the sidewalk which was completely covered with water. He observed the water and then stepped carefully into the water, but nevertheless, slipped and fell seriously injuring himself. The proof showed that the water on the sidewalk covered a thin "skim" of mud on the surface of the sidewalk which made it slippery and caused the plaintiff to fall. Under such circumstances, a jury question was presented, and judgment for the plaintiff was affirmed. In the case at bar, there is no evidence of any substance on the tile underneath the water nor any evidence that accumulated water made the tile slippery.

The landlord had a duty to the plaintiff to either remove the water from the floor of the restroom or warn of its existence. Unless he is to be made an insurer of his premises, he performed his duty in this case. The plaintiff, likewise, had a duty to see what was in plain sight, which includes both the accumulated water and the "wet floor" sign. He likewise has a duty to use his own senses to realize that he was walking through water as by his own testimony, he took at least two full steps into the accumulated water before he slipped.

Assuming that a duty to him was breached, reasonable minds cannot differ but that plaintiff's own inattention under comparative fault principles is at least 50 percent responsible for his slipping on the floor and his resulting injuries. *Madison v. Pickett County Bank and Trust Co.*, 33 S.W.3d 815, 816 (Tenn.Ct.App.2000).

The judgment of the trial court is in all respects affirmed with costs assessed against Kevin Easley.

_____
WILLIAM B.CAIN, JUDGE