# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 10, 2013 Session

## KAREN GRADY AND TIMOTHY GRADY v. SUMMIT FOOD CORPORATION D/B/A PITA PIT

**Appeal from the Circuit Court for Davidson County**
**No. 10C2893     Thomas W. Brothers, Judge**

---

**No. M2012-02493-COA-R3-CV - Filed August 13, 2013**

---

Customer of a restaurant who was injured when she fell on a concrete ramp leading into the restaurant brought suit against the restaurant, alleging that the ramp constituted a dangerous condition and that the restaurant failed to exercise reasonable care to avoid injuries to customers. The trial court granted summary judgment to the defendant on the grounds that the ramp did not constitute a dangerous condition and that the owners did not have notice that the ramp constituted a dangerous condition. Finding no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. PATRICIA J. COTTRELL, P. J., M. S., not participating.

Joe Bednarz, Jr., Nashville, Tennessee, for the Appellants, Karen Grady and Timothy Grady.

Brent S. Usery, Nashville, Tennessee, for the Appellee, Summit Food Corporation d/b/a Pita Pit.

## OPINION

This appeal arises out of a suit filed by Karen and Timothy Grady ("Plaintiffs") against Summit Food Corporation ("Defendant") to recover damages for injuries Mrs. Grady sustained while visiting Defendant's restaurant, the Pita Pit, in Nashville.[1] Mrs. Grady's complaint alleged that on August 8, 2009, she exited the Pita Pit and slipped on the concrete ramp leading from the restaurant's entrance. As a result of her fall, Mrs. Grady sustained injuries to her left arm.

---

[1] The complaint named Pita Pit Tennessee, LLC, and Summit Food Corporation d/b/a Pita Pit, as defendants. An agreed order was entered dismissing Pita Pit, LLC, and the case proceeded against Summit.

Plaintiffs filed a complaint in Davidson County Circuit Court on July 27, 2010, alleging that Defendant created the dangerous condition of the ramp; failed to maintain the ramp in a safe condition; painted the ramp without using non-skid paint or adhesive skid tape; and failed to warn of the dangerous condition. Plaintiffs requested a judgment for compensatory and punitive damages.

In due course, Defendant filed a motion for summary judgment supported by a Tenn. R. Civ. P. 56.03 statement of undisputed facts and excerpts from the deposition testimony of Karen Grady, Timothy Grady, Mark Mason, and Thomas Heydweiller.[2] In opposition to the motion, Plaintiffs filed a memorandum and a response to Defendant's Rule 56.03 statement and relied on portions of the same depositions. On July 25, 2012, the trial court entered an order granting Defendant's motion.

Plaintiffs appeal the trial court's grant of summary judgment and raise the following issues for review:

1.    Whether genuine issues of material fact exist regarding whether the ramp leading to Defendant's restaurant constituted an unreasonably dangerous condition.

2.    Whether genuine issues of material fact exist regarding whether [D]efendant was aware of an unreasonably dangerous condition and failed to correct or warn of this condition.

3.    Whether under *Hannan v. Alltel Publishing Co.,* 270 S.W.3d 1 (Tenn. 2008), Defendant negated an essential element of Plaintiff[s'] claim thereby shifting the burden to [Plaintiffs].

## I. STANDARD OF REVIEW

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). If the moving party's motion is properly supported, "[t]he burden of production then shifts to the

---

[2] Thomas Heydweiller testified that he was "part owner" with Mark Mason of the Pita Pit and that Mr. Mason took "100 percent control of Summit Food Corporation and the Pita Pit" after January 5, 2009.

nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215(Tenn. 1993)). The non-moving party may accomplish this by:

> "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06."

*Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Adver. & Publ. Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

In our review, we consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and afford that party all reasonable inferences. *Draper*, 181 S.W.3d at 288; *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.

## II. DISCUSSION

Court decisions have established the circumstances under which an owner of a business premise owes a duty to a customer of the business and the nature of any such duty. Owners are not insurers of their customers' safety. *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001) (citing *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 902 (Tenn. 1996); *Shofner v. Red Food Stores (Tenn.), Inc.*, 970 S.W.2d 468, 470 (Tenn. Ct. App. 1997)). Accordingly, they do not owe a duty to protect their customers from any and all risks. Nevertheless, "premises owners have a duty to use reasonable care to protect their customers from unreasonable risks of harm." *Id.* (citing *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998); *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984);

*Jackson v. Bradley*, 987 S.W.2d 852, 854 (Tenn. Ct. App. 1998)). This duty includes maintaining the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired. *Id.* (citing *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994)). A duty also attaches if the dangerous or defective condition was created by the owner or operator. *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980) (citing *Gargaro v. Kroger Grocery & Baking Co.*, 118 S.W.2d 561 (Tenn. Ct. App. 1938)).

Courts have declined to impose a legal duty on owners and occupiers of business premises "to protect against conditions from which no unreasonable risk of harm can be anticipated" and when the owner or operator "neither knew about nor could have discovered the condition in the exercise of reasonable care." *Psillas,* 66 S.W.3d at 864-65 (citing *Rice*, 979 S.W.2d at 309); *see Prosser and Keeton on Torts*, supra § 61 at 426. Therefore, as a matter of law, if the owner or its agent did not create the dangerous condition, the owner of a business premises does not owe a duty to its customers to protect them against conditions from which no unreasonable risk of harm can be anticipated and conditions of which the owner had no knowledge and could not have discovered with the exercise of reasonable care. *See Psillas,* 66 S.W.3d at 865; *see also Rice*, 979 S.W.2d at 309.

In the order granting summary judgment, the trial court stated:

1.     The undisputed facts . . . show that the entranceway to the Defendant's store did not pose a foreseeable, unreasonable risk of harm of which the Defendant was or should have been aware. There is, therefore, no genuine issue of material fact that the Defendant did not owe a duty of care to . . . Karen Grady.

2.     In addition, the undisputed facts . . . show that the Defendant did not have notice of any foreseeable risk of harm or dangerous condition which could cause Mrs. Grady to allegedly have slipped and fallen.

Plaintiffs contend that Defendant offered no proof to negate an essential element of their claim and that Plaintiffs submitted proof that created genuine issues of material fact regarding the dangerous condition of the ramp and whether the Defendant had notice that the ramp constituted a dangerous condition; therefore, summary judgment was inappropriate.

Defendant's Rule 56.03 statement included the following assertions pertinent to the issues in this appeal, all of which were admitted by Plaintiffs in their response, except numbers 27, 30, 31, and 34, which were denied:

7. Mrs. Grady was wearing short pants (capris) and flip-flops prior to leaving the hotel to go to Tootsies.

8. The weather was warm and dry without rain.

* * *

14. Mrs. Grady and her party stopped at the Pita Pit, the front of which had large windows with an "inclined, elevated walkway" from the sidewalk to the front entrance.

15. Mrs. Grady walked into the Pita Pit through the front door, which required her to walk on the elevated walkway. She was aware at that time of the presence of the elevated walkway and had no difficulty whatsoever traversing it while entering the store.

16. After receiving their orders, Mrs. Grady and her party proceeded to leave the Pita Pit through the front door. Mrs. Grady was the last one of her party to pass through the front door and prior to doing so she had not observed anyone experience any difficulty traversing the inclined walkway.

17. As she passed through the front doorway, Mrs. Grady was not looking down at her feet.

18. As Mrs. Grady walked out on the inclined walkway, her feet slid out from under her resulting in her falling and striking her left elbow on the concrete.

19. With regard to the condition of the walkway at issue, Mrs. Grady testified:

> Q:  As far as you know as you sit here today, are you aware of whether there was any substance, foreign substance, be it grease or anything along that line, present on the ramp that night?
> A:  Do I know for certain?
> Q:  Yes ma'am.
> A:  Again, it was slick. I can tell you that.
> Q:  Do you have any knowledge of what paint was used on the ramp?
> A:  I wouldn't know.
> Q:  Do you happen to recall what the condition of the paint on that ramp was on the night of your fall?
> A:  No, I don't.
> Q:  Did you ever go back out to the Pita Pit after the night of your fall?
> A:  Last night.
> Q:  Do you have any knowledge as to what the applicable building codes are for a commercial building here in Nashville?
> A:  I wouldn't know that.
> Q:  Do you have any knowledge as to whether nonskid paint was used on that ramp?
> A:  I wouldn't know that.

20. Mrs. Grady did not inspect the walkway on the night of the accident at issue.

\*\*\*

23. On an average weekend night, such as the night of Mrs. Grady's fall, the Defendant would have several hundred customers and would stay busy well after midnight up until it closed at 4:00 a.m.

24. Just prior to Mrs. Grady's fall, there were at least five (5) if not more customers in the Pita Pit store in addition to Mrs. Grady and her party.

25. The elevated walkway was present at the location that came to be the Pita Pit prior to the Defendant leasing the property.

26. The Defendant did not make any repairs, paint the walkway, or make changes to the condition of the elevated walkway during the time that it leased the location at issue.

27. The Defendant and its employees conducted regular cleaning of the interior and exterior of the store.

28. At no time prior to Mrs. Grady's fall had the Defendant received any report or other information indicating that someone had slipped or fallen in the entranceway or on the elevated walkway in front of the Pita Pit store.

29. The Defendant never observed the walkway being greasy or oily at any time prior to Mrs. Grady's alleged accident.

30. Mr. Mason used the entranceway to the Pita Pit on a daily basis prior to Mrs. Grady's alleged accident and never had any difficulty doing so.

31. Mr. Mason never received any complaints from any employee or customer regarding the layout or condition of the entranceway and had no knowledge of anyone ever slipping or falling in or on the entranceway.

32. Mr. Heydweiller is retired due to a medical condition and used a cane to walk at all times relevant to this matter.

33. Mr. Heydweiller used the front entranceway on a daily basis and never had any difficulty traversing the elevated walkway.

34. The paint on the walkway was abrasive and not slippery.

35. The Defendant is aware of no reason for there to have been any type of "greasy substance" on the walkway or entrance on or about the night of Mrs. Grady's fall.

In addition to the matters asserted in the Rule 56.03 statement, Defendant relied upon deposition testimony Mr. Mason and Mr. Heydweiller. Mr. Mason testified that he knew of no one else who had fallen on the ramp; that the ramp was cleaned regularly and that the paint on the ramp "was worn and weathered and not at all slick." Mr. Heydweiller testified that he was not aware of anyone having fallen on the ramp; and that a building inspector had looked at the ramp, that "it was a bit of a slope, but . . . didn't really pose anything that he was concerned about," and that he advised Mr. Heydweiller to "leave the front as it was."

The foregoing supports a finding that the ramp did not constitute a dangerous condition thereby negating an essential element of Plaintiffs' claim. Consequently, the burden shifted to Plaintiffs to produce evidence showing that there was a genuine issue that the ramp constituted a dangerous condition. *Hannan*, 270 S.W.3d 1, 9 (Tenn. 2008).

In their response to the motion, Plaintiffs relied on excerpts from the deposition of Mr. Heydweiller which they contended showed that the ramp constituted a dangerous condition. Specifically, they cite testimony that, during the buildout of the restaurant he was concerned about the slope of the ramp "mainly for accessibility to the store"; that he shared those concerns with Mr. Mason; that he was not required to bring the ramp up to codes; that he put a carpet on the ramp when it was cold and wet; and that there were a couple of "close calls" with restaurant customers who had been drinking at nearby bars almost falling.[3]

Construed in the light most favorable to plaintiffs, the testimony of Mr. Heydweiller is not evidence that the ramp constituted a dangerous condition; neither does it create a genuine issue of material fact in that regard. Rather it is testimony that he had a "concern" as to how the slope of the ramp would affect access to the store, that he met with a building inspector, and that he put down a carpet in inclement weather. The testimony is consistent with the general duty imposed on Defendant to maintain the premises in a reasonably safe condition. Consequently, the trial court properly held that the entranceway did not constitute a dangerous condition or pose an unreasonable risk of harm.

Having determined that the ramp did not constitute a dangerous condition, we turn to the question of whether there was an issue of material fact as to whether there was a dangerous condition on the ramp giving rise to a duty to correct or warn.

For an operator of a premises to be held liable for negligence in allowing a dangerous or defective condition to exist on the premises, the plaintiff must prove, in addition to the elements of negligence, that "the condition was caused or created by the owner, operator, or his agent," or if the condition was created by someone other than the owner, operator, or his agent, "that the owner or operator had actual or constructive notice that the condition existed

---

[3] Mr. Heydweiller testified:

Q: Did you ever have any near falls?
* * *
A: I'm trying to think. There might have been a couple, you know, just in, you know, people coming in and kind of - - usually it was with the drunks at night during what we would call our bar rush after the bars closed and they came down to eat. They would tip over their own two feet on flat surfaces truthfully. But those would be the ones that if there was anybody with a near slip coming into the store, it would have been them. But I don't personally remember anybody ever having a near fall during the day or even early evening coming into the store.

prior to the accident." *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). (citations omitted). Constructive notice may be established by proof that the dangerous or defective condition existed for such a length of time that the defendant should have become aware of the condition in the exercise of reasonable care. *Id.* (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)).

The pertinent allegation of the complaint stated "the ramp is covered with some sort of green paint. That the paint made the ramp more slippery and dangerous than contemplated by the ordinary person." In its answer, Defendant denied the allegation.[4]

In support of its motion, in addition to the evidence showing that the ramp itself did not constitute a dangerous condition, Defendant relied upon the deposition testimony of Mr. Mason and Mr. Heydweiller to show that the paint on the ramp did not create a dangerous condition. Mr. Mason testified that the "paint on this ramp was worn and weathered and not at all slick." Mr. Heydweiller testified that "[t]he paint that was there to me felt like it had some bit of abrasive in it." Neither testified that the ramp was slippery due to the presence of the paint or for any other reason. This testimony was sufficient to show that the paint did not create a dangerous condition, thereby shifting the burden to Plaintiffs to come forward with evidence establishing a genuine issue of material fact.

In responding to the motion, Plaintiffs relied on the deposition testimony of Mr. Heydweiller that he had considered putting non-skid paint or abrasive strips on the ramp but never got around to it as evidence that the ramp constituted a dangerous condition.[5] No other evidence was introduced by Plaintiffs that the ramp was slippery because of the paint.

_____

[4] In like manner the statement in Defendant's Rule 56.03 statement that "the paint on the walkway was abrasive and not slippery" was denied by Plaintiffs.

[5] The entire testimony of Mr. Heydweiller in this regard, taken in context, is as follows:

Q: Did you have - - ever have any trouble with the ramp getting slippery?
A: In the wintertime, it would get slippery, and then what we would do is we would - - we kept salt for the sidewalks and stuff out there to keep them from getting slippery. We had a - - there was a rug. We used to get a rug weekly from Cintas, actually several rugs: one for right by the front door on inside, one for in front of the front counter, and then a third one that we used to use when it would get wet or slippery out there that we would actually put outside on the ramp to get a little more traction.
Q: So you would use a rug of some type on the ramp?
A: Right, yes.
Q: Did you ever consider putting some type of non-skid paint or abrasive strips down?
A: At the time we looked into it, but we never actually got around to looking into it. The paint that was there to me felt like it had some bit of abrasive in it. But with everything that was going on, that was honestly the lowest on the priority list at the time as to getting done.

The evidence relied upon by Plaintiffs, taken in a light most favorable to them, does not create a genuine issue of fact that anything on the ramp constituted a dangerous condition or created an unreasonable risk of harm. To the contrary, the evidence produced by Defendant shows that the ramp was not in disrepair, that it did not violate any applicable building codes, that the paint on the ramp did not cause it to be slippery, that the ramp was routinely cleaned, and that there were no reports of incidents or injuries related to the ramp. In the absence of a dangerous condition, Defendant owed no duty to Plaintiffs. *See Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *3 (Tenn. Ct. App. Feb. 12, 2008).[6]

Our disposition of the foregoing issues pretermits our consideration of the third.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE

---

[6] The premises owner owes a general duty to customers or guests to use reasonable care to make its premises safe. The duty of reasonable care requires that an owner maintain the premises in a generally safe condition by removing or repairing potentially dangerous or defective conditions or by helping customers and guests avoid injury by warning them of the existence of a dangerous or defective condition on the premises of which the owner was or should have been aware. However, the owner is not "an insurer of the safety" of guests or customers on the premises, and the duty imposed on the owner does not include the responsibility to warrant the safety of a condition "for which no unreasonable risk is anticipated . . . ."

*Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *3-4 (Tenn. Ct. App. Feb. 12, 2008) (internal citations omitted).